UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DOWNMAN URGENT HEALTHCARE CLINIC, INC. D/B/A DR. GODWIN C. OGBUOKIRI | CIVIL ACTION |
| VERSUS | NO: 06-8701 |
| ZURICH NORTH AMERICAN INSURANCE COMPANY AND XYZ INSURANCE CARRIERS | SECTION "T"(1) |

## ORDER AND REASONS

Before the Court is Defendant's Motion For Partial Summary Judgment. Rec. Doc. 8. Plaintiff filed an Opposition. Rec. Doc. 12. The matter came for hearing without oral argument on September 5, 2007, and was submitted on the briefs. The Court, after considering the law and applicable jurisprudence and the memoranda of the parties is fully advised in the premises and ready to rule.

### I.   BACKGROUND

Defendant, Maryland Casualty Insurance Company, (hereinafter, MCC) issued a commercial property and general liability policy to Plaintiff for property located at 4543 Downman Road in New Orleans, Louisiana. The policy describes Plaintiff's interest in the policy as a tenant. See Exhibit "5" attached to Rec. Doc. 8 at p. 18. During Hurricane Katrina, the property sustained damage and Plaintiff sought coverage under the MCC policy. This suit ensued when Plaintiff was not paid. Plaintiff originally filed suit in Civil District Court, Parish of Orleans, and the action was removed to this Court on October 19, 2006. Rec. Doc. 1. The original complaint was amended in September 2007, to allege additional allegations against MCC. Rec. Doc. 18. The amended complaint alleges that Plaintiff bought what he thought was an all inclusive policy insuring both his medical facility and its content and therefore, he thought he was fully insured based on representation made by an insurance sales agent, who identified himself as the agent for Zurich of North America, that

everything, including the building, was covered under the policy.  Rec Doc. 18 at p. 1.

MCC filed this Motion for Partial Summary Judgment on two coverage issues.  First, MCC submits that the policy provides coverage for scheduled buildings in the amount of $1.00.  Rec. Doc. 8 at p. 4.  Accordingly, MCC argues that since there is only $1.00 in coverage regarding damage to the building, that there are not any genuine issues of material fact that Plaintiff cannot recover more than $1.00 in coverage for the building.  Rec. Doc. 1 at p. 5.  Second, MCC contends that the policy contains a Medical Professional Equipment Endorsement which provides that any damage to Plaintiff's medical equipment caused by water is not covered..  Rec. Doc. 8 at p. 6.  Thus, MCC asks the Court to find that the policy excludes damage due to flood and that the Medical Equipment Endorsement does not create coverage.  Rec. Doc. 8 at p. 7.

Plaintiff's opposition argues that the insurance agent which sold him the policy informed him that he was buying full coverage for the property and the contents.  Rec. Doc. 12 at p. 5.  Further, he asserts that he continued to pay premiums for coverage that he thought provided him full protection.  Because of this alleged "fraud" perpetuated by MCC or its agents, Plaintiff alleges the Court should not reward MCC.  Rec. Doc. 12 at p. 5.

**II.      LAW AND ANALYSIS**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(C).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Stults v. Conoco, Inc.,*

76 F.3d 651, 655-56 (5th Cir. 1996) *citing, Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 912-13 (5th Cir.).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995).  Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  *Id.* at 588.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La.2003).  The Louisiana Civil Code plainly provides that "[i]nterpretation of a contract is the determination of the common intent of the parties."  LSA-CC art. 2045; *See also Cadwallader,* 848 So.2d at 580; *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La.1994).  An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy."  LSA-R.S. § 22:654.  Interpretation of an insurance contract generally involves a question of law.  *Bonin v. Westport Ins. Corp.,* 930 So.2d 906, 910 (La.2006) *citing Robinson v. Heard*, 809 So.2d 943, 945 (La.2002); *See also La. Ins. Guar. Assoc*., 630 So.2d at 764.

Further, "[t]he words of a contract must be given their generally prevailing meaning."  LSA-CC art. 2047.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LSA-CC art.

2046.  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So.2d at 580.  Any "[a]mbiguity ... must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n,* 630 So.2d at 763.  Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.  LSA-CC art. 2048.  A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.  *Id.*  If the policy is susceptible to two or more interpretations, and each of the alternative interpretations is reasonable, then there is an ambiguity which must be construed against the drafter.  *Cadwaller,* 848 So. 2d at 580.  The fact that a term is not defined in the policy itself does not alone make that term ambiguous.  *Am. Deposit Ins. Co. v. Myles,* 783 So.2d 1282, 1287 (La.2001).

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, in the insurance context, in favor of the insured.  *La. Ins. Guar. Ass'n*, 630 So.2d at 764.  *See also* LSA-CC art. 2056.  Equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.  *Cadwallader*, 848 So.2d at 580.

### A.    Scheduled Buildings Coverage

The Commercial Property Declarations, Primary Property Coverages, provides that the policy limits for the Scheduled Buildings are shown in the Schedule of Values and the that deductible is $500.00.  Exhibit "5" attached to Rec. Doc. 8 at p. 16.  The Building and Personal Property Schedule  provides that the building insured is medical offices and that the Insured's

Interest is that of tenant. Exhibit "5" attached to Rec. Doc. 8 at p. 18. The Schedule Buildings coverage has a limit of $1.00 and provides that coverage is for replacement cost. Rec. Doc. 8 at p. 18. The sole building listed is the Plaintiff's Downman Road office.

Plaintiff does not dispute that the policy clearly and unambiguously provides for a coverage limit of $1.00 on the scheduled buildings; however, he argues that this is not the coverage he requested or was told he was going to be given. Rec. Doc. 12. The issue as to whether the coverage bound is the coverage requested has no bearing on the issue of whether the policy clearly and unambiguously provides for a coverage limit of $1.00. The language in the policy is clear that the coverage limit for the Plaintiff's building is $1.00. Accordingly, the Court **GRANTS** MCC's Motion for Summary Judgment on this issue.[1]

### B.     Medical Professional Equipment.

The Medical Professional Equipment coverage is found in an endorsement to the policy and provides, in pertinent part,

> Q. Medical Professional Equipment
>
> 1. This coverage applies to the following Personal Property located anywhere in the Coverage Territory:
>
> a. Your Equipment, supplies and books usual to the medical, dental, optometric or veterinary profession.

The policy then provides the following:

> a. Medical Professional Equipment

---

[1] The Court does not delve into any of Plaintiff's arguments that the coverage procured was not the coverage requested or that he thought he had full coverage when in fact all he had was a building scheduled limit of $1.00 because the only question before this Court is whether the policy clearly and unambiguously provides a $1.00 coverage limit. Any issues related to the negligence of the agent who procured coverage or the negligence of the insurer in issuing coverage, if any, may be brought up at a later time and is not before this Court today.

> We will not pay for any loss or damage caused by or resulting from: (1) Exposure to light; breakage of tubes, bulbs, lamps, articles made largely of glass. But we will pay for such loss caused directly by fire, lightning, explosion, windstorm, earthquake, flood, vandalism, aircraft, rioters, strikers, theft or attempted theft, or by accident to the vehicle carrying the property, if these causes of loss would be covered under this coverage form.

The policy further provides:

> III. COVERED CAUSES OF LOSS RISK OF DIRECT PHYSICAL LOSS OR DAMAGE unless the loss or damage is excluded or limited as directed below:
>
> B. EXCLUSIONS 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. g. Water (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; (2) Mudslide or mudflow; (3) Water under the ground surface pressing on, or flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings; or (4) Water that backs up or overflows from a sewer, drain or sump but only if Back—Up of Sewers and Drains is shown as "Excluded" in the Declarations. But if water, as described in A.1.g(1) through (4) results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage. Thus, the policy excludes coverage for damage due to flood and the Medical Equipment endorsement does not create coverage for this excluded peril.

Plaintiff does not challenge this language in the policy as being ambiguous nor does he argue that the Medical Equipment Endorsement would provide coverage for an otherwise excluded peril. This Court finds that the language in the Medical Equipment Endorsement is clear and unambiguous. The endorsement lists the items that would be covered in the event they are directly caused by fire, lighting, explosion, windstorm, flood, etc. *See* Section a, Medical Professional Equipment, *supra.* The policy clarifies that if the items listed are damaged by one of the perils listed in the preceding

6

sentence but that peril is not covered elsewhere in the policy, then there is no coverage for the listed item. Accordingly, under a plain reading of the straightforward language in the policy, the Medical Equipment Endorsement only covers losses from perils not specifically excluded elsewhere in the policy. Thus, MCC's summary judgment is **GRANTED** on this issue. The Court does not make a finding regarding whether the alleged damage caused to the Plaintiff's Medical Equipment is covered or not covered by this Endorsement as there has been no evidence presented on what caused the damage to Plaintiff's Equipment. The Court's ruling is strictly limited to only the interpretation of the Medical Equipment Endorsement.

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (Rec. Doc. 8) is **GRANTED**.

New Orleans, Louisiana this 7th day of March, 2008.

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**